(No. 20885.—

JULIUS J. KOOS *et al.* Plaintiffs in Error, *vs.* WALTER P. SAUNDERS *et al.* Defendants in Error.

*Opinion filed June 24, 1932—Rehearing denied October 6, 1932.*

HARRY A. KERINS, (GEORGE A. GORDON, and IRVING GOODMAN, of counsel,) for plaintiffs in error.

STEVENS, CARRIER & GRIFFITH, for defendants in error.

Mr. JUSTICE DEYOUNG delivered the opinion of the court:

Julius J. Koos and Jeanne J. Koos filed a petition in the superior court of Cook county for a writ of *mandamus* to compel the village of LaGrange, its president and trustees to issue a permit for the construction of a gasoline service station upon a parcel of ground owned by the petitioners. The defendants filed a demurrer to the petition, the demurrer was sustained and the petition was dismissed. The court certified that the validity of a municipal ordinance was involved in the case and that the public interest required a direct review by this court. An appeal was prayed but not perfected. Subsequently this writ of error was sued out.

The village of LaGrange is situated in the western part of Cook county and has a population in excess of ten thousand. The Chicago, Burlington and Quincy railroad runs in a southwesterly direction through the village. Hillgrove avenue within the village limits and Burlington avenue for a shorter distance are streets parallel and contiguous to and respectively north and south of the right of way of the rail-

road. Between Fifth avenue on the east and Dover place on the west, a distance of approximately ten blocks, the buildings facing south on Hillgrove avenue and north on Burlington avenue are occupied for business purposes. Kensington avenue, a north and south street, equi-distant from the east and west boundaries of the village, intersects this business district near its center.

By a zoning ordinance the village of LaGrange is divided into five classes of districts known as "A" residence districts, "B" residence districts, "C" residence districts, local business districts and light manufacturing districts. In the three classes of residence districts, uses of buildings for commercial or manufacturing purposes are prohibited. Buildings in local business districts, however, may be used for all the purposes permitted in the several classes of residence districts and, in addition, for forty-seven business or commercial uses specifically enumerated. Among the latter are gasoline and oil stations "subject to the regulations of the present or hereafter adopted ordinances of the village."

Spring avenue is the first street west of Kensington avenue. The plaintiffs in error own a parcel of ground, consisting of parts of three lots situated at the southeast corner of Spring and Burlington avenues, the parcel having a frontage of approximately fifty-one feet on the former and of one hundred sixty-three feet on the latter street. The block consists of thirty-one lots which, pursuant to the zoning ordinance, are classified as follows: twenty-seven in three residence districts and the remaining four, including the parcel of the plaintiffs in error, in a local business district. The record fails to disclose the number of single-family residences, and two and multiple-family dwellings in the block.

The southwest corner of Burlington and Kensington avenues is occupied by a gasoline service station. The buildings immediately to the west are used as public garages. The only vacant ground abutting on Burlington avenue

between Kensington and Spring avenues is the parcel of ground owned by the plaintiffs in error. Another gasoline service station is conducted at the southwest corner of Burlington and Spring avenues. The vacant ground belonging to the plaintiffs in error is practically surrounded by public garages, automobile sales rooms and gasoline service stations.

Paragraph 973 of the municipal code provides: "No person, firm or corporation shall locate, build, construct or maintain any public garage, or garage for the keeping, hiring or letting of automobiles to the public, or any filling station, in the village of LaGrange, on any lot in any block or square in which two-thirds of the improved property, according to frontage on both sides of the street surrounding such block or square, is used exclusively for residence purposes, including classes 'A,' 'B' and 'C,' as set forth in the so-called 'zoning ordinance,' without the written consent of a majority of the property owners, according to frontage on both sides of the streets surrounding such block or square, and the written consent of the owners of a majority of the property abutting on such street or alley within two hundred feet of the proposed site of such public garage, or garage for the keeping, hiring or letting of automobiles to the public, or filling station."

The plaintiffs in error filed with the president and board of trustees of the village a written application for a permit to erect and operate a gasoline service station upon their parcel of ground. Plans and specifications for the proposed station, approved by the building commissioner, were attached to the application. The proprietor of the station across Spring avenue, directly west of the site of the plaintiffs in error, actively opposed the issuance of the permit on the ground that the neighborhood already had too many such stations and that the operation of an additional one would be detrimental to his business. The permit was refused solely because a majority of the property owners according to frontage on both sides of the streets surrounding

the particular block and a majority of the owners of property abutting on Burlington avenue within two hundred feet of the site of the proposed station did not consent in writing to the construction and maintenance of the station. The petition for a writ of *mandamus* followed.

The contentions of the plaintiffs in error are that paragraph 973 of the municipal code, in requiring the written consent to the construction and operation of a gasoline filling station on any lot in any block of the village by a majority of the property owners according to frontage on both sides of the streets surrounding the block, and also the written consent of the owners of a majority of the property abutting on the street within two hundred feet of the site of the proposed business, is, as applied to the facts of the present case, arbitrary, discriminatory and unreasonable; that the village authorities have not the power to subject the plaintiffs in error, in the use of their property for a purpose and in a manner in no way injurious to the public health, safety, morals or general welfare, to the arbitrary and uncontrolled will of the owners of neighboring property as contemplated by the ordinance; that paragraph 973 deprives the plaintiffs in error of a lawful use of their property, without due process of law, and that the paragraph, for the foregoing reasons, is void.

Legislatures may not, under the guise of the police power, impose restrictions that are unnecessary and unreasonable upon the use of private property or the pursuit of useful activities. (*Seattle Trust Co.* v. *Roberge,* 278 U. S. 116). A municipality, even if possessed of the entire police power of the State, may not deprive a citizen of valuable property rights under the guise of prohibiting or regulating some business or occupation that has no tendency to injure the public health or morals or interfere with the general welfare. (*Spies* v. *Board of Appeals,* 337 Ill. 507). In *Western Theological Seminary* v. *City of Evanston,* 325 Ill. 511, on page 521, this court said: "The privilege of every

citizen to use his property according to his own will is both a liberty and a property right. 'Liberty' includes not only freedom from servitude or restraint, but also the right of every man to be free in the use of his powers and faculties, to pursue such occupation or business as he may choose, and to use his property in his own way and for his own purpose, subject only to the restraints necessary to secure the common welfare. (*Ruhstrat* v. *People*, 185 Ill. 133; *Frorer* v. *People*, 141 id. 171; *Haller Sign Works* v. *Physical Culture Training School*, 249 id. 436). Both liberty and property are subject to the police power of the State, under which new burdens may be imposed on property and new restrictions placed on its use when the public welfare demands it. The police power is, however, limited to enactments having reference to the public health, comfort, safety or welfare. An act which deprives a citizen of his liberty or property rights cannot be sustained under the police power unless a due regard for the public health, comfort, safety or welfare requires it. (*Ruhstrat* v. *People, supra; Bailey* v. *People,* 190 Ill. 28; *Bessette* v. *People,* 193 id. 334; *People* v. *City of Chicago,* 261 id. 16; *Catholic Bishop* v. *Village of Palos Park,* 286 id. 400). The legislative determination as to what is a proper exercise of the police power is not conclusive. Whether the means employed have any real, substantial relation to the public health, comfort, safety or welfare, or are arbitrary and unreasonable, is a question which is subject to review by the courts, and in determining that question the courts will disregard mere forms and interfere for the protection of rights injuriously affected by arbitrary and unreasonable action."

Ordinances have been sustained which require the written consent of owners of real property, according to frontage, within a restricted area as a condition precedent to a particular use of private property or the pursuit of some private business. (*Smolensky* v. *City of Chicago, 282* Ill. 131; *Cusack Co.* v. *City of Chicago, 267* id. 344). Such

ordinances, however, must be reasonable and not arbitrary and oppressive. (*People* v. *Andrews,* 339 Ill. 157; *Spies* v. *Board of Appeals,* 337 id. 507; *People* v. *Village of Oak Park,* 331 id. 406; *Seattle Trust Co.* v. *Roberge,* 278 U. S. 116). In determining whether an ordinance is reasonable, the court will take into consideration the object to be accomplished, the means provided to that end and the conditions and circumstances to which the ordinance is made applicable. (*Troy* v. *Village of Forest Park,* 318 Ill. 340; *City of Carbondale* v. *Reith,* 316 id. 538; *City of Sullivan* v. *Cloe,* 277 id. 56). In *People* v. *Village of Oak Park,* 331 Ill. 406, it was held that a provision of a municipal ordinance defining a residence district to be the area adjacent to any building, existing or to be erected, measuring four hundred feet from its outer walls in every direction, within which area more than half the buildings are used or intended for residence purposes, is arbitrary and oppressive where it operates to prevent the erection of a gasoline filling station in a section of the village devoted chiefly to commercial pursuits, and which, considering property frontage instead of number of buildings, could be classed as a business section, there being another gasoline filling station, as well as garages, already located within the area.

Compliance with paragraph 973 of the municipal code requires the written consent of a majority of the property owners according to frontage on both sides of the streets surrounding the block in which the site of the proposed gasoline station is situated and in addition the written consent of the owners of a majority of the property abutting on Burlington and Spring avenues within two hundred feet of that site. The provision of the municipal code purports to give the owners of one-half of the frontage on both sides of the streets surrounding the block in question or even the owners of one-half of the property abutting on Burlington avenue or Spring avenue within two hundred feet of the proposed site, authority, uncontrolled by any rule or

standard prescribed by legislative action, to prevent the plaintiffs in error from using their parcel of land for a gasoline service station. The owners of property abutting on the streets defined may withhold their consent arbitrarily, or for selfish reasons, and their failure to consent, so far as the ordinance is concerned, is final because it contains no provision for a review. The failure to obtain the consent of the competitors in business owning property on Burlington avenue or Spring avenue within two hundred feet of the southeast corner of those streets is sufficient under paragraph 973 to deny the plaintiffs in error the use of their property for a lawful purpose. Indeed the proprietor of the gasoline station across Spring avenue gave as the reason for his opposition to the granting of the permit to the plaintiffs in error that it would be detrimental to his business. It need not be observed that the police power may not be invoked to serve a purely private purpose.

By section 1 of the Zoning law (Cahill's Stat. 1929, p. 423; Smith's Stat. 1929, p. 364), the city council in each city and the president and board of trustees in each village are given the power, among others, to classify, regulate and restrict the location of trades and industries and the location of buildings designed for specified industrial, business, residential and other uses. The same section further provides that in all ordinances passed under its authority, due allowance shall be made for existing conditions, the conservation of property values, the direction of building development to the best advantage of the entire city, village or incorporated town, and the use to which property is devoted at the time of the enactment of any such ordinance. The president and board of trustees of the village, in the passage of the zoning ordinance, apparently observed these requirements when they classified the lot of the plaintiffs in error within a local business district. The site of the proposed gasoline station is within an area not only zoned for, but also devoted to, business purposes. It lies

practically at the center of a business district extending ten blocks along the railroad and immediately to the east and west of the site are garages and gasoline service stations. The building and operation of such a station at the southeast corner of Burlington and Spring avenues will not be inconsistent with the character of the district.

No objection has been urged to the plans and specifications for the proposed station, and it may be assumed that they conform to the requirements of the municipal code. Nothing in the record tends to show that the station and its operation will be injurious to the public health, safety, morals or general welfare. The classification of the site within a local business district and the specific grant of permission for the erection and use of a gasoline station in such a district, although subject to the regulations of present or future ordinances, show that the village authorities found that the erection and maintenance of the proposed station would not be detrimental to the interests of the community or the neighborhood.

The defendants in error rely upon the cases of *People v. Village of Oak Park,* 266 Ill. 365, *People v. Ericsson,* 263 id. 368, and *City of Chicago v. Stratton,* 162 id. 494, to sustain the reasonableness of paragraph 973 of the municipal code. In none of these cases was the applicant for a permit required to obtain consents to the extent and under the conditions required by the ordinance in question. That ordinance, as applied to the facts of the case at bar, is arbitrary and unreasonable and therefore void.

The judgment of the superior court is reversed and the cause is remanded to that court with directions to overrule the demurrer of the defendants in error.

*Reversed and remanded, with directions.*