HOPE DELIVERANCE CENTER, INC., Plaintiff-Appellee, *v.* ZONING BOARD OF APPEALS OF THE CITY OF CHICAGO *et al.*, Defendants-Appellants.

First District (5th Division)   No. 82—568

Opinion filed July 22, 1983.

Stanley Garber, Corporation Counsel, of Chicago (Jerome A. Siegan and Cheryl L. Smalling, Assistant Corporation Counsel, of counsel), for appellants.

George S. Lalich and Daniel E. Radakovich, both of Chicago, for appellee.

JUSTICE MEJDA delivered the opinion of the court:

This is an appeal from an order of the trial court reversing the decision of defendant Zoning Board of Appeals of the city of Chicago (Zoning Board) denying the application of plaintiff Hope Deliverance Center, Inc., for a special use. The issue presented is whether the denial of a special use was against the manifest weight of the evidence produced at the hearing before the Zoning Board, particularly, whether plaintiff established: (1) that a church is necessary for the public convenience at that location; (2) that the proposed use is designed, located and proposed to be operated to protect the public health, safety and welfare; and (3) that the special use will not cause substantial injury to neighborhood property values. We affirm.

Plaintiff purchased the property at 1700 West 87th Street, Chi-

cago, Illinois (the property), which property is presently zoned as a B2-1 restricted retail district, and subsequently applied to the Zoning Board for a special use permit to locate and establish a church in the existing one-story brick building. The commissioner of the department of planning of the city of Chicago, pursuant to ordinance (Municipal Code of Chicago 1981, ch. 194A, arts. 11.4—1, 11.10—2), in a written report to the Zoning Board stated that the establishment of a church at the location appears necessary for the public convenience and that it will not cause substantial injury to the value of the property in the neighborhood and recommended that the special use permit be approved. The zoning administrator thereafter rendered a decision wherein the application was not approved as not in conformance with the zoning ordinance, specifically chapter 194A, section 8.4—1 (Municipal Code of Chicago 1981, ch. 194A, art. 8.4—1). Pursuant to plaintiff's appeal from the zoning administrator's decision, the Zoning Board held a public hearing at which the following evidence was presented.

A former owner of the property testified that the property had been used as a medical center from 1953 through 1968 and had been vacant from 1968 to 1980 despite more than 100 attempts to sell it. Area residents testified that the vacant property attracts vandals and provides a hiding place for persons engaging in criminal conduct, that the building is an "eyesore" and that they favor using the property as a church. A local businessman testified that the use of the property as a church would cause no injury to the property values in the area, nor would it hurt neighborhood businesses. Four area ministers attested to the religious and social contributions provided the community by plaintiff.

Reverend Jackie Jordan, pastor of plaintiff church, testified that for the past eight years plaintiff has been a "store-front church" located approximately two blocks from the property. This will not be a "store-front church." The plans submitted show that the renovation of the property will not change the outward appearance or the basic architectural style of the building. The church will contain 163 seats and 18 parking spaces will be provided on site. The principal activities of the church are scheduled to take place on Sundays and on Monday and Friday evenings. Reverend Jordan entered into evidence a petition containing the signatures of 288 area residents, letters from nine community churches, and the signatures of 35 local businessmen supporting the granting of the special use permit.

Scott W. Tyler, a licensed appraiser and real estate broker whose qualifications were stipulated and not disputed, testified that a num-

ber of vacant lots as well as vacant and abandoned buildings are located on 87th Street in the area of the property. In his opinion establishing a church on the property would not substantially injure the value of neighborhood property.

Mrs. Thomas, who identified herself as a community spokesperson, opposed the granting of the special use permit. She testified that the community wants to maintain the business nature of 87th Street and submitted to the Zoning Board a petition containing the signatures of 161 community residents opposed to the special use permit. She testified that the community is presently attempting to have a public library located on the property. A similar effort four years ago was unsuccessful.

Irving Larson, local businessman and area resident, opposed the special use permit because of traffic congestion in the immediate area. He testified that only one building is vacant on 87th Street in the vicinity of the property. John Sypniewski, area resident, opined that the building is architecturally unsuitable for a church. Area resident Irene Scott favored more business on 87th Street and testified that 87th Street is congested when she drives home from work each day at 5 p.m. The alderman of the ward within which the property is located testified that there is strong community opposition to the special use permit. Finally, area resident David Brian expressed his opinion that more businesses would be locating on 87th Street.

Following the hearing the Zoning Board denied plaintiff's application for a special use permit based upon the following findings:

> "*** that a church at this location is not compatible with the business character of W. 87th Street and would cause substantial injury to the value of other business property in the neighborhood; that the proposed use is not in the public interest as indicated by representatives of the community who appeared at the hearing and voiced opposition to the establishment of a church at this location and presented a petition to the board with 161 signatures in opposition to the proposed use ***."

On plaintiff's action for administrative review, the trial court adjudged the decision of the Zoning Board to be against the manifest weight of the evidence and contrary to the law and, therefore, reversed the decision of the Zoning Board. The Zoning Board appeals.

OPINION

■■ ■ The Zoning Board contends that plaintiff failed to prove that the proposed use would comply with the standards set forth in the Chicago zoning ordinance for the allowance of a special use per-

mit and, therefore, the trial court erred in reversing its decision. On administrative review the findings and conclusions made by the administrative agency on questions of fact shall be held to be *prima facie* true and correct. (Ill. Rev. Stat. 1981, ch. 110, par. 3—110.) A reviewing court may not reweigh the evidence but may determine only whether the agency's findings and decisions are against the manifest weight of the evidence. (*South Side Move of God Church v. Zoning Board of Appeals* (1977), 47 Ill. App. 3d 723, 365 N.E.2d 118.) If the findings are supported by competent evidence, the decision will be affirmed. *St. James Temple of the A.O.H. Church of God, Inc. v. Board of Appeals* (1968), 100 Ill. App. 2d 302, 241 N.E.2d 525.

The Chicago Zoning Ordinance, in pertinent part, provides:

"11.10—4 Standards. No special use shall be granted by the Zoning Board of Appeals unless the special use:

(1) a. Is necessary for the public convenience at that location;

b. Is so designed, located and proposed to be operated that the public health, safety and welfare will be protected; and

(2) Will not cause substantial injury to the value of other property in the neighborhood in which it is to be located; and
***

(4) Such special use shall conform to the applicable regulations of the district in which it is to be located." Municipal Code of Chicago 1981, ch. 194A, art. 11.10—4.

■ An applicant for a special use permit has the burden of proving that the proposed use meets all the standards required by the controlling zoning ordinance. (*Racith Corp. v. Zoning Board of Appeals* (1981), 95 Ill. App. 3d 716, 420 N.E.2d 630.) However, the failure of the applicant to submit sufficient evidence to satisfy one or more requirements of the ordinance will not necessarily result in the denial of the proposed use if such prohibition bears no real and substantial relation to the public health, safety, morals or general welfare (*Columbus Park Congregation of Jehovah's Witnesses, Inc. v. Board of Appeals* (1962), 25 Ill. 2d 65, 182 N.E.2d 722) and if there is no adverse effect on adjacent properties. *South Side Move of God Church.*

The Zoning Board first argues that plaintiff offered no evidence to show that this particular locale was assigned to plaintiff's ministry, that the members of its congregation live within close proximity to the property, or that plaintiff attempted to locate its church in a zoning district where churches are permitted uses. Although such factors have been relied on as tending to show that a special use is necessary

for the public convenience at a particular location (see *South Side Move of God Church; St. James Temple of the A.O.H. Church of God, Inc. v. Board of Appeals* (1968), 100 Ill. App. 2d 302, 241 N.E.2d 525), they are not the only criteria for establishing compliance with the statutory standard.

■ The term "necessary" as used in the zoning ordinance does not mean "absolutely necessary" but has been construed to mean "expedient" or "reasonably convenient" to the public welfare. (*Illinois Bell Telephone Co. v. Fox* (1949), 402 Ill. 617, 85 N.E.2d 43; *Foster & Kleiser, Division of Metromedia, Inc. v. Zoning Board of Appeals* (1976), 38 Ill. App. 3d 50, 347 N.E.2d 493.) Plaintiff church existed in the vicinity of the property for eight years prior to the proposed relocation which prompted its seeking the instant special use permit. Its long association with the community coupled with the benefits which have accrued to the community as a result of such presence is evidence that it is necessary or reasonably convenient to the public for the church to remain in the community. Plaintiff's failure to adduce specific evidence regarding the necessity for locating at the particular site for which the special use permit is sought does not bar the granting of the special use permit, however, as such necessity can be inferred from the record. It is undisputed that the presence and work of plaintiff church has benefited the community. By its proposed relocation plaintiff seeks to improve its facility so that it may better serve the community and establish a dignified place of worship. The particular location for which the special use permit is sought is suitable for such purposes. Thus, the evidence introduced by plaintiff is sufficient to show that the special use is necessary for the public convenience at the location of the property.

■ The Zoning Board next contends that locating a church on the property will result in increased congestion regarding traffic and parking on 87th Street which will threaten the public health, safety and welfare. It is recognized that traffic and parking are important factors to be considered in determining whether the public safety and welfare are protected. (*St. James Temple of the A.O.H. Church of God, Inc. v. Board of Appeals* (1968), 100 Ill. App. 2d 302, 241 N.E.2d 525.) However, the chairman of the Zoning Board at the hearing stated that on the testimony presented the parking provided on site is adequate as a matter of law and, in fact, the sufficiency of such parking was not an issue. The only evidence of increased traffic congestion was the opinion testimony of two area residents. Their reports of congestion on 87th Street related to hours which typically are heavy traffic periods. Such testimony was speculative at best regarding the

probability of increased traffic congestion resulting from plaintiff church and disregarded the fact that none of the activities at the church are scheduled for the hours during which heavy traffic was reported. Though we acknowledge that a church in any location will add to traffic and parking congestion during hours of worship, increased traffic arguments founded upon similar evidence have been rejected by the Illinois Supreme Court as a basis for denial of a special use permit. (See *Columbus Park Congregation of Jehovah's Witnesses, Inc. v. Board of Appeals* (1962), 25 Ill. 2d 65, 182 N.E.2d 722; see also *La Salle National Bank v. Village of Skokie* (1962), 26 Ill. 2d 143, 146, 186 N.E.2d 46, 48.) Therefore, the increased traffic congestion shown by the evidence here presented is an insufficient basis for denying the instant special use.

As evidence that the special use is so designed, located and proposed to be operated that the public health, safety and welfare will be protected, plaintiff offered testimony that occupancy of the property will eliminate vandalism and the occupied property will no longer be available as a refuge for persons engaged in criminal conduct. The Zoning Board argues that the public health, safety and welfare would be similarly protected by any occupancy of the property and, therefore, plaintiff failed to meet its burden of proof in that it did not prove that it could better protect the public health, safety and welfare than could a business use. Such argument is founded on a standard not contained in the statute and is unpersuasive. It is indisputable that the elimination of a site of criminal activity within the neighborhood is protective of the public health, safety and welfare. There is no requirement that the special use afford a greater degree of protection than would be afforded by a use for which the property is zoned. We find, therefore, that the evidence presented by plaintiff satisfies the second requirement.

Finally, the Zoning Board argues that the special use will cause substantial injury to neighborhood property values. An expert witness testified, however, that establishing a church on the property will not substantially injure the value of neighborhood property and plaintiff introduced evidence demonstrating that 35 local businessmen favored allowance of the special use. The only contrary evidence is the testimony of area residents that they believe that the allowance of the special use will have a deleterious effect on property values and that they prefer to have a business locate on the property. Use of the property cannot be restricted or limited by a zoning ordinance merely because neighboring property owners so desire, or because they think such restrictions might protect the value of their residences. (*Regner*

*v. County of McHenry* (1956), 9 Ill. 2d 577, 138 N.E.2d 545; *La Salle National Bank v. County of Du Page* (1977), 54 Ill. App. 3d 387, 369 N.E.2d 505.) The testimony of the expert witness was uncontradicted except for the testimony of area residents as to their preferences, which testimony is not a sufficient basis for restricting plaintiff's use of its property. On this record the Zoning Board was, therefore, not justified in finding that the special use would cause substantial injury to the value of other business property in the neighborhood.

■ By our decision here we do not hold that a church can locate anywhere or that, once established in a neighborhood, it can relocate within that neighborhood without regard to zoning regulations. The location of churches is a proper subject for regulation by zoning ordinance (*Columbus Park Congregation of Jehovah's Witnesses, Inc. v. Board of Appeals* (1962), 25 Ill. 2d 65, 182 N.E.2d 722; *Lubavitch Chabad House of Illinois, Inc. v. City of Evanston* (1982), 112 Ill. App. 3d 223, 445 N.E.2d 343) and each case of this kind must be decided on its own facts and circumstances (*La Salle National Bank v. County of Kendall* (1977), 55 Ill. App. 3d 219, 370 N.E.2d 1283). On the evidence here presented we find that plaintiff met the standards of the special use ordinance and, therefore, the trial court did not err in reversing the decision of the Zoning Board as against the manifest weight of the evidence.

For the reasons stated above, the judgment of the circuit court reversing the order of the Zoning Board is affirmed.

Affirmed.

WILSON, P.J., and O'CONNOR, J., concur.